**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victory Insurance and Financial Services LLC, | No. CV-23-08015-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Ben Oberg Enterprises LLC, et al., | |
| Defendants. | |

Defendant Ben Oberg Enterprises, LLC ("Defendant") has moved for summary judgment on Plaintiff Victory Insurance and Financial Services, LLC's ("Plaintiff") claims for promissory estoppel, unjust enrichment and consequential damages. (Doc. 55 at 1–2). The matter is fully briefed. (Docs. 58–59). For the following reasons, the Court will grant summary judgment in favor of Defendant on Plaintiff's claim for consequential damages but not its claims for promissory estoppel or unjust enrichment.

**I.    Background**

This is a case about a contract dispute. The parties entered into a contract for Defendant to provide advertising services to Plaintiff. (Doc. 55 at 2; Doc. 58 at 4). The objective of this contract was "Full Digital Marketing Infrastructure For [Plaintiff]; market analysis, script writing, media production, sales funnel/web process, qualification process, full branding/value/call-to-action marketing and retargeting process." (Doc. 55 at 14). The estimated timeline for this objective was eight weeks, with the first phase consisting of "set up funnel/web process, set up active campaign for email marketing, create email marketing

segmentations/retargeting sequences, create offers to drive qualified prospects into funnel/sales system, set up ad account pixels, work with [Plaintiff] to create all digital assets, record all ads/funnel content/branding content, and prep for launch." (*Id.*) In phase-two, Defendant would "Launch Ads/funnels, test audiences, optimize, & scale. This process [would] start[] immediately as soon as the funnel is 100%. This [would] also include email marketing, retargeting sequences (via email and ads), continued consulting, funnel optimization, etc. Phase II is the management outlined under the "financial agreement" section." (*Id.*)

Each party bore some responsibility, with Plaintiff being required to show up for all pre-planned calls, answer any needed questions that will enhance performance of funnels, sales copy, ads, and/or anything contributing to the success of the project, and provide materials requested so the project can be completed on time and with complete accuracy. (*See id.* at 14). Defendant's responsibility required it to communicate with Plaintiff as often as needed, optimize ads/marketing, create high converting sales process and digital marketing infrastructure that provides Plaintiff with qualified financial prospects and buyers (AUM & Annuity prospects & buyers), create scale in the digital aspect of Plaintiff's business, scale ad spend as efficiently as possible, and optimize and increase ROAS (return on ad spend) as efficiently as possible. (*See id.* at 16). The parties agreed to an initial fee of $65,000 as well as $4,000 per month plus twenty-percent commission through the length of engagement. (*Id.*) The parties entered into this contract on July 30, 2021. (*Id.* at 17). Plaintiff states that it paid Defendant an additional $12,841.32 in additional social media platform costs, as well as $21,600 in upfront management fees for a grand total of $99,441.32.[1] (Doc. 58 at 5).

Plaintiff states that over the first year it had engaged Defendant, it produced "approximately 19 low-end leads, many of whom did not meet minimum qualification

---

[1] Defendant notes that in "In Section III of its Initial Disclosures dated April 3, 2023, Plaintiff provided a damages calculation of $86,600 (comprised of $65,000 for the Phase I payment and $21,600 for payment of Phase II management fees) for fees paid to BOE along with consequential damages for which no estimate or calculation was provided." (Doc. 55 at 3). Plaintiff later estimated its consequential damages at $1,500,000. (*Id.*)

requirements, and none of which resulted in a single customer or a single dollar of revenue for [Plaintiff]." (Doc. 58 at 5). It also states that on August 1, 2022, it determined that Defendant had not met its obligations to Plaintiff and, consequently, Plaintiff discontinued its on-going relationship with Defendant. (*Id.*) Plaintiff states that its losses are, at a minimum, $1,500,000 as Defendant promised Plaintiff's $100,000 investment would be returned to it by a factor of ten. (*Id.*)

Due to the above alleged conduct, Plaintiff brought claims for (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Promissory Estoppel; and (4) Unjust Enrichment against Defendant. (Doc. 1-3 at ¶¶ 33–66). Plaintiff seeks damages of $86,600 plus "Facebook ad expenses, quantum meruit in the amount to which Defendant was unjustly enriched, and attorney's fees and costs/ interest." (*Id.* at ¶ 66). Plaintiff specifically seeks consequential damages in its Complaint under its breach of contract claim specifically related to "expenses for Facebook advertising, lost profits, incidental damages and expenses incurred for which Victory has not been fully reimbursed." (*Id.* at ¶ 39). Plaintiff did not provide a valuation for these consequential damages, however. (*Id.*) Defendant notes that Plaintiff estimated in its Second Supplemental Disclosure, for the first time, that it suffered consequential damages of $1,500,000. (Doc. 55 at 3). This estimate was made in response to one of Defendant's interrogatories, which requested "a complete calculation of all damages including consequential damages." (*Id.* at 3; 46–47).

## II.     Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Courts do not weigh evidence to discern the truth of the matter; they only determine whether there is a

1 genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id*. at 250–51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322. The summary-judgment stage is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024) (citation omitted). In fact, the non-moving party "must come forth with evidence from which a jury could

reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

**III.     Discussion**

Defendant seeks summary judgment on Plaintiff's claims for promissory estoppel, unjust enrichment and consequential damages. (Doc. 55 at 1–2). It argues that Plaintiff's promissory estoppel and unjust enrichment claims cannot be maintained due the existence of a "valid and enforceable contract." (*Id*.) It also argues that Plaintiff's consequential damages claim should be dismissed as Plaintiff has failed to allege damages that are reasonably certain, and the alleged consequential damages were not reasonably foreseeable. (*Id*. at 2). The Court will address each argument in turn.

**A.     Promissory Estoppel**

"When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Under Arizona law, an enforceable contract requires "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (citation omitted).

Alternatively, a "promissory estoppel claim allows a plaintiff to recover for detrimental reliance on a promise." *Satamian v. Great Divide Insurance Co*., 545 P.3d 918, 926 (Ariz. 2024). Promissory estoppel is not a theory of contract liability, but instead a replacement for a contract when parties are unable to reach a mutual agreement. *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 474, 967 P.2d 607, 615 (Ariz. Ct. App. 1998). Moreover, Parties may plead "alternatively" or inconsistently. *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1030 (D. Ariz. 2003)

(citing *MacCollum v. Perkinson*, 913 P.2d 1097, 1107 (Ariz. Ct. App. 1996) (plaintiffs are "entitled to plead in the alternative under Rule 8(e) . . . [and] entitled to pursue all [their] theories of recovery to their conclusion at trial.")). Promissory estoppel is "a proper claim for relief as an ***alternative*** to a breach of contract claim." *AROK Const. Co. v. Indian Const. Servs.*, 848 P.2d 870, 878 (Ariz. Ct. App. 1993) (emphasis added).

Defendant argues that Plaintiff's promissory estoppel claim should be dismissed because Plaintiff has brought a breach of contract claim and "it is an undisputed material fact that both parties concede that there was a valid, enforceable contract." (Doc. 55 at 6). However, as noted above, promissory estoppel is "a proper claim for relief as an alternative to a breach of contract claim." *AROK Const. Co.*, 848 P.2d at 878. So, parties may plead in the alternative. *See Arnold & Assocs., Inc.*, 275 F. Supp. 2d at 1030; Fed. R. Civ. P. 8(a)(3).

Indeed, Plaintiff's Amended Complaint states that "***[a]lternatively***, in the event there is no other clear, full, adequate and complete legal remedy available to [Plaintiff] against [Defendant] that is as complete, practical and efficient as an equitable remedy, [Defendant] should be liable to [Plaintiff] under the theory of promissory estoppel." (Doc. 1-3 at ¶ 50) (emphasis added). It also alleges that "[Defendant] made promises to [Plaintiff] that [Defendant] knew at the time of making those promises it would induce [Plaintiff] to pass up other opportunities and induce [it to] pay [Defendant] in reasonable reliance upon [Defendant's] promises. (*Id.* at ¶ 51). Plaintiff, through its promissory estoppel claim, is seeking relief for its reasonable reliance on Defendant's alleged promises—promises which are not specifically defined in the terms of the contract. (*See id.* at ¶¶ 49–57).

Moreover, Plaintiff's Response asserts that, while the parties agree that a valid contract exists, Defendant contests that "it did not have a contractual duty to provide the promised customers or revenues guaranteed to [Plaintiff]." (Doc. 58). So, the parties disagree as to the contours of their agreement (*See* Doc. 55 at 10 ("Plaintiff may argue that the consequential damages are based on lost profits, however, the Contract provides no

guarantee of results, no guarantee of profits")—therefore, there is a genuine dispute of material fact present here.  *See Celotex*, 477 U.S. at 322–23.

In sum, summary judgement on Plaintiff's promissory estoppel claim is not proper because it is a claim pled, in the alternative, to its breach of contract claim.

**B.**     **Unjust Enrichment**

Next, Defendant argues that Plaintiff's unjust enrichment claim cannot be maintained due the existence of a valid and enforceable contract.  (Doc. 55 at 6).  This argument also fails.

"[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166 (1976) (citation omitted*); see also Sutter Home Winery, Inc. v. Vintage Selections, Ltd*., 971 F.2d 401, 408–09 (9th Cir. 1992).  However, as Plaintiff notes, "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery. A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has ***already received the benefit of her contractual bargain***." *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (emphasis added) (citing *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 355, 732 P.2d 579 (Ariz. Ct. App. 1986) (stating that when a plaintiff does not obtain the benefit of its bargain, she is "free to pursue a claim for unjust enrichment")).

The Ninth Circuit has affirmatively held that, under Arizona law, "a plaintiff can pursue an unjust enrichment claim as an alternative theory of recovery in conjunction with a breach of contract claim, subject, however, to only one recovery." *Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011) (citing *Trustmark Ins. Co. v. Bank One*, 48 P.3d 485, 492–93 (Ariz. Ct. App. 2002)).  So, the jury could find that no contract exists, therefore, the defendant would not be liable under a breach of contract theory but still find the defendant liable under an unjust enrichment theory.  *See id*.  For that very reason, the Court will not dismiss Plaintiff's unjust enrichment claim.

Plaintiff's unjust enrichment claim asserts that Defendant "gained and benefitted

through its contact with [Plaintiff], including receiving payments totaling $86,600, and thus was enriched." (Doc. 1-3 at ¶ 60). It also alleges that this enrichment was "unjustified and unwarranted," as Defendant "failed to fulfill promises made to [Plaintiff] to: (i) deliver a unique marketing message; (ii) deliver high-quality polished marketing and branding, (iii) deliver qualified prospects, and (iv) deliver a timely return on [Plaintiff's] investment." (*Id*. at ¶ 61). It further alleges that Defendant "did not invest $86,600 in capital, labor or other value into performing promises made to [Plaintiff]" and that Plaintiff "was impoverished by the losses caused by [Defendant's] unjust and inequitable conduct." (*Id*. at ¶¶ 62–63). Plaintiff alleges, in essence, that it paid Defendant to perform certain tasks, but that Defendant did not do any of the work it agreed to do. (*See id*.)

Plaintiff specifically states in its Response that it has not received the benefit of its bargain because Defendant did not generate any customers, or any revenue, for Plaintiff despite its promise to provide a financial return to Plaintiff equal to at least ten times Plaintiff's investment. (Doc. 58 at 9). Defendant does not address this argument. (*See* Doc. 59). In his deposition, Mr. James Hait, Plaintiff's owner, testified that Defendant "promised a huge return on our investment by December 31st, 2021." (Doc. 58-1 at 22). Mr. Hait later stated that Plaintiff "never received the prospects or the leads" from its dealings with Defendant which were promised and that "it's kind of hard to close a percentage of zero." (*Id*. at 23). Thus, because Plaintiff has set forth evidence that it has not received the benefit of its contractual bargain with Defendant, it is lawful for it to maintain its unjust enrichment claim pled in the alternative to its breach of contract claim. *See Adelman*, 90 F. Supp. 2d at 1045; *Lopez*, 434 F. App'x at 699.

### C. Consequential Damages

Defendant finally argues that Plaintiff's consequential damages claim should be dismissed as Plaintiff failed to allege damages that are reasonably certain, and the alleged consequential damages were not reasonably foreseeable. (Doc. 55 at 2). Plaintiff makes an attenuated argument regarding the "minimum" amount of damages it has incurred as well as "reasonably estimated additional revenues of $500,000 above this minimum

amount and for recurring revenues from clients promised by Defendant." (Doc. 58 at 9). It also argues that "[v]ery little is required by applicable law to substantiate the presentation of this amount to the jury, merely computation of the precise promise made by [Defendant] to generate at least 10 times [Plaintiff's] investment, and at least $1 million by the end of 2021." (*Id*. at 10). In essence, Plaintiff seeks $1 million for the first 5 months of doing business with Defendant and $500,000 for an additional 6 months they did business together. (*Id*. at 11). Defendant argues in its Reply that these damages are only supported by Defendant's "uncorroborated, self-serving" statement. (Doc. 59 at 7).

"At common law, 'consequential' or 'special' damages are those damages caused by a breach of contract or warranty that can reasonably be supposed to be within the contemplation of the parties at the time of the contracting." *Seekings v. Jimmy GMC of Tucson, Inc*., 130 Ariz. 596, 601, 638 P.2d 210, 215 (1981) (citation omitted). To survive a motion for summary judgment, a plaintiff must "provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award." *Magnetar Techs. Corp. v. Intamin, Ltd*., 801 F.3d 1150, 1159 (9th Cir. 2015) (quoting *McGlinchy v. Shell Chem. Co*., 845 F.2d 802, 811 (9th Cir. 1988)). As Defendant points out, a plaintiff is required to "demonstrate the amount of damages with 'reasonable certainty'" in Arizona. *Cnty. of La Paz v. Yakima Compost Co*., 233 P.3d 1169, 1186 (Ariz. Ct. App. 2010) (quoting *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963)).

Under Arizona law, consequential damages are defined as "damages which arise naturally from the breach of a contract that were within the parties' contemplation." *Miscione v. Bishop*, 636 P.2d 149, 152 (Ariz. Ct. App. 1987); *see also Consequential Damages*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Losses that do not flow directly and immediately from an injurious act but that result indirectly from that act."). Damages must be proximately caused by the alleged breach. *See Standard Chtd. PLC v. Price Waterhouse*, 945 P.2d 317, 347 (Ariz. Ct. App. 1996) (citation omitted); *see also Seekings v. Jimmy GMC, Inc*., 638 P.2d 210, 215 (Ariz. 1981) (noting that consequential damages "are those damages caused by a breach of contract . . . that can reasonably be supposed to

be within the contemplation of the parties at the time of the contracting"). Furthermore, consequential damages must also be "reasonably foreseeable." *Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818, 846 (D. Ariz. 2021).

In his deposition, Mr. Ben Oberg, Defendant's owner, testified that he did not ever tell Plaintiff or its owner, Mr. Hait, that he would increase Plaintiff's investment by a value of ten, or "10x" its value. (Doc. 58-3 at 5). The contract between the parties does not guarantee any such return on investment either. (*See* Doc. 55 at 14–17). However, when asked again about whether he told Mr. Hait he could expect a ten-times return on investment, Mr. Oberg acquiesced that he "could've used words like that." (Doc. 58-3 at 6). Aside from this statement, Plaintiff does not provide evidence to support the $1,500,000 it seeks in damages.

The Court finds that Plaintiff's claim for consequential damages cannot survive summary judgment as it has not demonstrated the amount of such damages with any certainty—yet alone the "reasonable certainty" required in Arizona. *Yakima Compost Co.*, 233 P.3d at 1186; *see also Arguedas*, 2024 WL 253644, at *2 (noting that summary judgment is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events."). In Plaintiff's Complaint, it alleges that Defendant is liable for "direct and consequential damages, including but not limited to, the $86,600 paid to Oberg, expenses for Facebook advertising, lost profits, incidental damages and expenses incurred for which Victory has not been fully reimbursed." (Doc. 1-3 at ¶ 39). This allegation falls painfully short of the "reasonable certainty" requirement to demonstrate the $1,500,000 sought. *Yakima Compost Co.*, 233 P.3d at 1186. Instead, allowing Plaintiff to present its consequential damages claim to the jury would leave them to "speculation or guesswork" in determining the amount of damages to award, which the Court cannot do. *See Magnetar Techs. Corp.*, 801 F.3d at 1159.

Furthermore, the contract itself does not provide a guarantee of results or profits. (*See* Doc. 55 at 15–17). It only provides that Defendant will "***optimize*** and increase ROAS

(return on ad spend) as efficiently as possible." (Doc. 55 at 16). Mr. Oberg did admit that he "[could have] used words like" increasing Plaintiff's return on investment tenfold, however, this is the ***only*** evidence Plaintiff has submitted to support its claim for consequential damages. (Doc. 58-3 at 6). Plaintiff has failed to demonstrate its entitlement to its sought consequential damages. *See Celotex*, 477 U.S. at 322 (noting that the non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial). It does not allege or argue how these damages flow from the alleged injury or how such damages are reasonably foreseeable. *See Flowers-Carter*, 530 F. Supp. 3d at 846. In sum, Plaintiff has failed to come forward with evidence which a jury could rely on to reasonably render a verdict in its favor; so, its claim cannot survive summary judgment. *See In re Oracle Corp. Sec. Litig*., 627 F.3d at 387

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgement (Doc. 55) is **GRANTED in part** and **DENIED in part**. Plaintiff's consequential damages claim will be dismissed but its claims for promissory estoppel and unjust enrichment will remain.

**IT IS FURTHER ORDERED** that in light of Plaintiff's remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 10 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 27th day of February, 2025.

Honorable Diane J. Humetewa
United States District Judge